# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
      **Plaintiff,**

  v.                                             **Case No. 09-CR-65**

**THOMAS H. BUSKE**
      **Defendant.**

## DECISION AND ORDER

In this mail fraud and money laundering case the government alleges that defendant Thomas Buske, the owner of a trucking firm, defrauded the S.C. Johnson Company ("SCJ") by submitting fraudulent invoices for transportation services, which an SCJ insider, Milt Morris, approved in exchange for kick-backs. In a previous motion, defendant sought discovery from the government regarding its communications with SCJ, arguing that the government and SCJ improperly coordinated their efforts in this and a previous civil suit SCJ filed against defendant and others. I largely denied that motion but authorized pre-trial subpoenas under Fed. R. Crim. P. 17(c).

Defendant then issued subpoenas to two federal agents and three attorneys for SCJ (one in-house lawyer and two lawyers who represented SCJ in the civil suit). The government and SCJ moved to quash the subpoenas,[1] and I held a hearing on February 13, 2012. At the hearing, the parties agreed to obtain modification of a protective order issued in the civil case SCJ filed against defendant. Defense counsel indicated that some of the materials subject to

---

[1]The government moves to quash the subpoenas issued to the agents as well as the SCJ attorneys. See United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982) (holding that the government had standing to move to quash subpoena issued to third party).

the Rule 17 subpoenas were produced in civil discovery; he agreed to review the civil discovery and then advise the court of the status of his requests upon completion of that review. I agreed to this proposal and set the case for status regarding the subpoenas/motions to quash on April 13, 2012 and for trial on October 1, 2012. I also set a March 27, 2012 deadline for defendant to file a motion to dismiss. On the agreement of the parties, I later extended the motion deadline to April 27, 2012, and adjourned the status to June 1, 2012. Defendant filed a motion to dismiss based on double jeopardy and improper coordination, along with a request for an evidentiary hearing, on April 27, 2012.

On May 30, 2012, on defendant's unopposed request, I adjourned the June 1, 2012, status and directed the parties to advise the court if and when they would like to reset a hearing to discuss the outstanding subpoenas and motions to quash. I further indicated that I would issue a written decision on the motion to dismiss. On July 26, 2012, I denied defendant's motion without a hearing. On August 10, 2012, again on the agreement of the parties, I adjourned the trial to January 2013.

On October 25, 2012, defendant filed a status report regarding the subpoenas, in which he asks that I now rule on the motions to quash, given the approaching trial date. I directed the government and SCJ to respond to defendant's submission, which they have done. The matter is ready for decision.

## I. APPLICABLE LEGAL STANDARD

Rule 17(c) permits subpoenas for papers, documents, data, or other objects, which the court may direct be produced before trial. Fed. R. Crim. P. 17(c)(1). "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

2

Rule 17(c) is not intended to serve as a broad discovery device, see United States v. Nixon, 418 U.S. 683, 698-99 (1974); United States v. Hardy, 224 F.3d 752, 755 (8th Cir. 2000), but rather functions "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials," Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951). In order to gain access, the defendant must show that the subpoenaed document is relevant and admissible, requested with adequate specificity, and not otherwise procurable reasonably in advance of trial by the exercise of due diligence. The defendant must further demonstrate that he cannot properly prepare absent pre-trial production and inspection, and that the failure to obtain such inspection may tend unreasonably to delay the trial. Finally, the application must be made in good faith and not intended as a general "fishing expedition." See Nixon, 418 U.S. at 699-700; United States v. Tokash, 282 F.3d 962, 971 (7th Cir. 2002); United States v. Ashman, 979 F.2d 469, 495 (7th Cir. 1992).

The Rule does not permit defendants to comb through records in an effort to find a defense to a criminal charge; instead, it allows only for the gathering of specifically identified documents reasonably believed to contain evidence relevant to an admissible issue at trial. Tokash, 282 F.3d at 971. The need for evidence to impeach witnesses is generally deemed insufficient to require production in advance of trial under Rule 17(c). Nixon, 418 U.S. at 701; Hardy, 224 F.3d at 756.[2]

---

[2] Defendant cites district court cases from other circuits suggesting that strict application of the Nixon standard to a defense subpoena would be improper. See, e.g., United States v. Tucker, 249 F.R.D. 58 (S.D.N.Y. 2008); United States v. Nachamie, 91 F. Supp. 2d 552 (S.D.N.Y. 2000). However, the Seventh Circuit has adopted the Nixon test in this context. I will in considering the instant motions be mindful of the fact that a defendant, who lacks the ability to employ the grand jury's investigative powers, stands in a different position than the government in obtaining materials from third parties. However, the motions should be considered under the Nixon/Tokash standards.

## II.  DISCUSSION

**A.    Subpoenas Directed to Government Agents**

The subpoenas issued to the two agents seek: "A copy of all e-mails, text messages, instant messages, letters, notes, memoranda, cell phone records, or documentation of any kind reflecting or relating to correspondence or other communication between you and S.C. Johnson, from January 1, 2004, to the present."  (R. 77 Ex. 3 & 4, attachment A, footnote omitted.)  First, this is essentially the same information defendant sought from the government in his previous discovery motion, and he provides no authority for the use of Rule 17(c) to obtain material from individual government employees that he could not obtain via discovery. See United States v. Orena, 883 F. Supp. 849, 867 (E.D.N.Y. 1995) (holding that a defendant may not obtain through Rule 17(c) documents protected from disclosure pursuant to Rule 16, and granting the government's motion to quash subpoenas directed at the Office of the United States Attorney and the Federal Bureau of Investigation).

Second, defendant's request fails the test of specificity, requesting a broad range of documents over an eight+ year period.  See United States v. Morris, 287 F.3d 985, 991 (10th Cir. 2002) (quashing as insufficiently specific a subpoena for "all records, documents, reports, telephone logs, etc., surrounding the investigation").  Similarly, compliance with such a request would be unduly burdensome.  See United States v. Booth, No. 2:08-cr-00283, 2011 WL 6139062, at *2 (D. Nev. Dec. 9, 2011) (finding over-broad a subpoena using "the words 'any,' 'all,' and 'any and all' in many of the forty separate requests for broad categories of information").

Third, defendant fails to show admissibility, offering only speculation that enforcement

4

will permit the gathering of useful impeachment material (which is not, in any event, a generally accepted pre-trial use of Rule 17(c), see Nixon, 418 U.S. at 701). Defendant argues that the materials may show bias and improper coordination between SCJ and the government, evidencing a "departure from the proper administration of criminal justice." United States v. Kordel, 397 U.S. 1, 13 (1970). As explained in detail in my orders denying defendant's motion for discovery and his motion to dismiss, I see nothing improper in cooperation between an alleged victim of crime and the prosecution.

    I have reviewed the table attached to defendant's response brief, which summarizes the parallels in major civil and criminal events, and again fail to discern anything nefarious. Defendant will certainly be free to cross-examine cooperating witnesses regarding bias, but he fails to show how production of this broad range of communications will further that endeavor. Nor does he provide a sufficient explanation as to how or why SCJ's cooperation with the government would make the agents biased. As indicated in my previous discovery order, law enforcement agents who investigate alleged crimes and recommend charges necessarily believe that someone has been victimized or they would not refer the matter to prosecutors. This does not make them biased. Defendant's allegations of improper colluding fall short.[3] For these reasons, I grant the government's motion to quash the subpoenas served on the agents.[4]

---

[3] Defendant cites United States v. Segal, 276 F. Supp. 2d 896 (N.D. Ill. 2003), in support of a request for in camera production and inspection of these materials, but in that case the defendant alleged that witnesses may have been passing hacked information on to the government. Defendant makes no similarly specific allegation of wrongdoing in this case.

[4] Of course, the government must continue to comply with its obligations under Local Rule 16, the Jencks Act, and Brady/Giglio. Any communications with SCJ falling within those parameters must be timely produced. In his status report, defendant complains that he has not received any additional materials. The court assumes that the government understands and complies with its obligations, and that the absence of further production simply means there

5

**B.  Subpoenas Direct to SCJ**

The subpoenas directed to SCJ's outside lawyers contain ten items, the subpoena to the in-house lawyer the same ten plus one more, as follows:

> 1. A copy of all e-mails, text messages, instant messages, letters, notes, memoranda, cell phone records, or documentation of any kind reflecting or relating to correspondence or other communication between you and S.C. Johnson, from January 1, 2004, to the present.
>
> 2. A copy of the internal investigation, which began "in mid-March, 2004, as referred to by Inspector Michael Levinson in his affidavit in support of a search warrant for Milt Morris' office . . . . This request includes, but is not limited to, a copy of all the materials referenced in the Levinson affidavit, which are:
>
>> a. selected e-mail messages in the company's computer system;
>> b. the forensic review of the company-issued computers of the director and deputy director of the transportation department;
>> c. a review of certain documents examined in the director's work area;
>> d. the interviews with four former transportation department employees, including the employee who oversaw payments to trucking company vendors; a secretary of the deputy director; a secretary of the director; and an assistant to the director;
>> e. the interview of the company's former accounts payable manager;
>> f. the reports of private investigators hired to follow Milt Morris, or perform other tasks pursuant to the investigation.
>
> 3. A copy of any other related internal investigation conducted by S.C. Johnson or any outside body concerning its Transportation Department, other than the internal investigation referred to by Inspector Levinson in his search warrant affidavit, concerning the years 1999-2004.
>
> 4. A copy of all notes, memoranda, or documentation of any kind pertaining to any interview performed by S.C. Johnson, its lawyers or investigators, of any potential government witness in this case [list of 67 names attached].

---

is nothing more to produce. Defendant argues that correspondence, including e-mails and text messages, by agents Levinson and Ricchio (likely government witnesses) with SCJ qualify as Jencks and open file material and must be produced. However, defendant fails to explain how all such communications would qualify as "statements" under 18 U.S.C. § 3500(e).

6

5. A copy of all correspondence and documentation of all communication between S.C. Johnson, its lawyers and investigators, and any potential government witness, and/or the witness's lawyer, if any. This request includes, but is not limited to:

> a. a copy of the letter from Kirkland & Ellis to Peter O'Malley concerning cooperation, dated April 14, 2009, as referred to by O'Malley in his July 2, 2009, letter to AUSA Stephen Ingraham (filed in Case No. 08-CR-325 (E.D. Wis) on July 2, 2009);
> b. a copy of the letter dated September 28, 2007, sent by O'Malley to S.C. Johnson regarding settlement, and the letter sent by S.C. Johnson in response, as referred to by O'Malley in his October 11, 2007, interview with Mr. Ingraham and SA Ricchio (153);

6. The identity of any S.C. Johnson employee fired, demoted, reassigned, or who took early retirement as a consequence of conduct related to the allegations in the criminal indictment or the S.C. Johnson civil lawsuit against Mr. Buske, and a copy of the S.C. Johnson Human Resources file for those individuals;

7. A copy of any S.C. Johnson Human Resources file for any potential government witness in this case. Although it appears that he was not interviewed by the government, this request also includes Morris' supervisor, Ronald Ellifson;

8. A copy of all audits and performance reviews or evaluations of the S.C. Johnson Transportation Department, concerning the years 1999-2004;

9. A copy of all correspondence or other communication received by S.C. Johnson from any person complaining about, criticizing or raising concerns about the conduct of Milt Morris, and the response by S.C. Johnson, if any;

10. An S.C. Johnson Transportation Department employee, Dave Fogarty, was interviewed on November 4, 2004, by Inspector Levinson, Gayle Kosterman, and attorney Jeff Willian from Kirkland & Ellis. Mr. Fogarty stated that he "knows for certain fuel surcharge money is going directly to Milt [Morris],"– i.e., kickbacks (446). As to this:

> a. Produce a copy of all materials from S.C. Johnson, its lawyers or investigators, documenting the fact that Mr. Fogarty made this assertion, in substance, prior to November 4, 2004, to any person employed by or affiliated with S.C. Johnson in any fashion;
> b. Produce a copy of all documents from S.C. Johnson, its lawyers or investigators, that would have supported this assertion by Mr. Fogarty at the time it was made (i.e., documents in existence as of November 4, 2004).

7

> 11. A copy of any amended federal tax return filed by S.C. Johnson for the tax years 1999, 2000, 2001, 2002, 2003, or 2004, which S.C. Johnson filed as a consequence of the conduct of Thomas Buske and/or Milton Morris, or any co-conspirator of Thomas Buske and/or Milton Morris, as alleged by S.C. Johnson in *S.C. Johnson & Son, Inc. v. Milton E. Morris, et al.*, Case No. 04-CV-1873 (Racine County).

(R. 77 Ex. 5, attachment A.) I address each in turn.

**1.     SCJ Correspondence with the Government**

For essentially the same reasons set forth above, I will grant the motions to quash regarding request 1. The request is over-broad and unspecific, and defendant fails to demonstrate the relevance of this correspondence. See United States. v. Reyes, 239 F.R.D. 591, 606 (N.D. Cal. 2006) (quashing a subpoena that adopted a particular theory of defense and then cast a wide net with the goal of reeling in something to support it).

The court rejected a similar defense request for Rule 17(c) subpoenas in United States v. Wittig, 247 F.R.D. 661 (D. Kan. 2008). In that case, the defendant, accused of defrauding his employer, requested subpoenas directed to the employer's counsel for correspondence between the company and the United States Attorney's Office, arguing that these documents might show improper collusion between the government and the company. Id. at 662-63. The court rejected the request, finding that the proposed subpoenas resembled discovery requests, employing such terms as "any and all" documents or communications, or "includes, without limitation." Id. at 664. The court also rejected the defendant's claim that he might be able to use the information in the impeachment of company employees who might testify for the government, noting that the need for evidence to impeach witnesses is generally insufficient to require its production in advance of trial under Rule 17(c). Id.

In his October 25 status report, defendant indicates that given the volume of discovery

8

produced in the civil case it is not possible to determine whether SCJ produced all of its communications with government agents; only SCJ knows that, and he contends that it would not be feasible for defense counsel to manually search for responsive documents. He therefore asks that SCJ be required to provide the Bates pages of the civil discovery concerning its communications with government agents. However, defendant provides no authority for shifting this burden to SCJ. Further, it is unclear from the status report the extent to which defendant has completed his review of the civil discovery over the past eight months; nor does it appear that counsel have resolved the issue of the protective order regarding some of these materials.

### 2.    **The 2004 Internal Investigation**

In this request, defendant seeks a copy of the 2004 internal investigation SCJ completed regarding this matter, which Investigator Levinson referenced in his search warrant application for Morris's office. He also seeks various related materials. This request is sufficiently specific, as least concerning the investigation report; it also appears to be relevant, as it pertains directly to the alleged offense in this case.

In its reply, SCJ states that it did not give a written "internal investigation report" to the government in October 2004. Rather, it orally reported to the government its belief that it was a victim of a crime perpetrated by Morris and others. It further indicates that, other than as protected by attorney-client privilege and the work product doctrine, the internal investigation that it conducted was detailed in both deposition and trial testimony, and non-privileged documents were produced as part of the civil action; those materials are in the possession of defendant's civil counsel.

In his status report, defendant does not indicate whether he has located any such

9

report(s) in the civil discovery. Rather, he quotes from SCJ's counsel's statements at the February 13, 2012 status, where she indicated that to the extent such materials were provided to Levinson, they would be in government files already. (R. 89 at 21:11-13.) However, she later stated: "As to an internal investigation written report itself, no such thing exists." (Id. at 22:10-11.) But then said: "In terms of what was produced, I just don't have it at my fingertips as to whether or not we maintained that as a unique separate file." (Id. at 22:23-25.) In its November 6 reply, SCJ indicates that its lawyers have, since the February 13, 2012 conference, reviewed their files to confirm that they do not have records of any documents provided to Levinson in October 2004. "It is also the recollection of counsel that information was shared orally and that no documents were specifically provided to Mr. Levinson at the time he submitted an affidavit in support of a search warrant for the office of Milt Morris." (R. 110 at 2.) It is still unclear whether an actual internal investigative report exists.

In an effort to bring this matter to resolution, I will rule as follows: To the extent that SCJ possesses an internal investigative report, the substance of which it shared with Levinson and/or the government, it must be produced. See, e.g., United States v. Bergonzi, 216 F.R.D. 487, 495-98 (N.D. Cal. 2003) (directing disclosure of internal investigation conducted by law firm into alleged fraud where the company disclosed the documents to the government); see also Reyes, 239 F.R.D. at 604 ("It makes no difference whether a privilege-holder copies a written text, reads from a written text, or describes a written text to an outside party. The purpose and effect is the same in all cases; the transmission of privileged information is what matters, not the medium through which it is conveyed.").

### 3. Any Other Internal Investigations for 1999-2004

In his status report, defendant indicates that an internal investigation of the SCJ

Transportation Department, conducted for SCJ by Hector Diaz, was produced in civil discovery, and that he can locate it without the need for Bates numbers from SCJ.

SCJ indicates that there are no other non-privileged internal investigations. Defendant, quoting a portion of SCJ's counsel's statement at the February 13 hearing, contends that some additional documents may have been shared with the government. In its reply, SCJ's lawyer indicates that her statement was misconstrued. I need not delve into this any further. This request, seeking "any other related internal investigation" of the SCJ Transportation Department for the years 1999-2004, reads like a civil discovery request for production, rather than a properly focused Rule 17(c) demand. The motion to quash it will be granted. See Bowman Dairy Co., 341 U.S. at 220 ("Rule 17(c) was not intended to provide an additional means of discovery.").

### 4. SCJ Correspondence with Potential Witnesses

Defendant's request for "all notes, memoranda, or documentation of any kind pertaining to any interview" performed by SCJ with "any potential government witness," including sixty-seven possible people, is, as phrased, over-broad.[5] As noted above, courts regularly deny/quash subpoenas phrased in this manner. See, e.g., Booth, 2011 WL 6139062, at *2; Wittig, 247 F.R.D. at 664; United States v. Shanahan, No. S1–4:07 CR 175, 2008 WL 619213, at *4 (E.D. Mo. Mar. 3, 2008); United States v. Louis, No. 04 CR 203, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005); see also United States v. Noriega, 764 F. Supp. 1480, 1493 (S.D. Fla.1991) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up,

---

[5]Defendant indicates that it appears SCJ and the government jointly interviewed at least thirteen government witnesses.

11

this is a sure sign that the subpoena is being misused.").

It also appears that most if not all of the responsive documents would be hearsay. See Reyes, 239 F.R.D. at 600 (finding that law firms' records of witness interviews would be inadmissible hearsay).[6] Defendant argues that witness statements may be admissible as prior consistent or inconsistent statements, or can be used to refresh recollections. Even if I might be inclined to order production of witness statements from people who actually testify, defendant fails to sufficiently narrow his request. Finally, defendant fails to refute SCJ's work product argument regarding interviews conduct by its lawyers alone. See, e.g., Sandra T.E. v. South Berwyn School Dist. 100, 600 F.3d 612, 622 (7th Cir. 2010).[7]

### 5. Correspondence with Government Witnesses

In this request, defendant seeks correspondence by SCJ with any government witness, e.g., Peter O'Malley. However, the government has indicated that O'Malley will not be a witness at trial. Defendant now argues that SCJ should be ordered to produce any correspondence that it had with "any other government witness in this case." (R. 105 at 12.) This request is insufficiently specific, and the motion to quash will be granted.

---

[6] The Reyes court noted that while the documents sought in that case could be used for impeachment purposes, Rule 17(c) does not entitle a defendant to the pre-trial production of impeachment material. Id. at 601. The court concluded that in that case it would be appropriate to order the items produced for in camera inspection so that the court could review the material and disclose it if and when it became ripe for impeachment. Id. However, that procedure is appropriate only if the defendant satisfies the specificity requirement. In Reyes, the court found that the documents "sought were, at least in part, the very impetus for such the government's prosecution of Reyes." Id. In the present case, defendant makes no similar showing of specificity regarding this request for communications regarding some sixty-seven people, who may or may not be witnesses at trial.

[7] I assume the government has, consistent with Local Rule 16(a)(2), produced all reports of interviews with witnesses it possesses.

12

**6.     SCJ Personnel Files of Terminated Employees**

Defendant has withdrawn this request.

**7.     SCJ Personnel Files of Government Witnesses**

Defendant seeks SCJ personnel files for potential government witnesses. I grant the motion to quash this request. First, defendant provides no clear indication as to what he expects to find in these files or how it would be relevant and admissible. He suggests that the files may contain impeachment material, but this is also speculation and, in any event, impeachment material is not generally a proper subject of a Rule 17(c) subpoena.

Second, this request implicates the privacy interests of the employees at issue. See, e.g., United States v. Dale, 155 F.R.D. 149, 152 (S.D. Miss. 1994); see also United States v. Shrader, No. 1:09-0270, 2010 WL 2836752, at *4 (S.D. W.Va. July 20, 2010) ("Courts have often considered privileges and privacy interests in determining whether or not Rule 17(c) subpoenas should be quashed."). Defendant suggests that in camera inspection could solve this problem, but because he fails to get over the initial hurdles I decline to order that.

Finally, at least some of this material is available in the civil discovery. In his status report, defendant indicates that his civil counsel requested twenty-eight files, and SCJ produced two – Milt Morris's and Katie Scheller's. These were the two files defendant specifically mentioned in his previous briefs opposing the motion to quash. However, these files are, defendant indicates, subject to a protective order in the civil case which prohibits civil counsel from sharing them with criminal defense counsel. Defendant states: "Rather than spend time going back to the Racine County Circuit Court – a court with no authority or jurisdiction over this case – to amend the protective order to allow undersigned counsel to have

13

access to those two files, this Court should enforce the subpoena. SCJ should be ordered to produce the requested personnel files to this Court." (R. 105 at 12.) I adjourned this matter in part to permit counsel to obtain the necessary modifications of the Racine protective order. In its reply to defendant's status report, SCJ states that defendant's counsel never responded to a June 28, 2012 e-mail from SCJ's counsel asking to discuss and finalize a confidentiality agreement. To the extent that defendant can obtain these documents reasonably in advance of trial by the exercise of due diligence, his subpoena must be quashed. Defendant specifies no other files.

**8.    Audits/Performance Reviews of SCJ Transportation Department**

Defendant has withdrawn this request.

**9.    Correspondence About Milt Morris**

In his status report, defendant indicates that he will obtain this material from civil counsel.

**10.    Documents Related to Dave Fogarty's Assertion**

Defendant indicates that he will also obtain this material from civil discovery.

**11.    SCJ Amended Tax Returns 1999-2004**

Finally, defendant seeks copies of SCJ's amended tax returns for the years 1999 to 2004, arguing that if the allegation that he and Morris stole $15 million from the company is true, then SCJ filed returns for those years overstating its business expenses; the company should, on discovering the theft, have filed amended returns to accurately report this loss. A failure to file amended returns would, defendant contends, be inconsistent with a claim of large scale fraud. If SCJ filed such returns, defendant wants check the amount it reported as theft.

14

Defendant fails to show that such documents would be relevant and admissible at trial. This trial will be about defendant's alleged conduct, not SCJ's tax obligations. Permitting the introduction of this evidence would also force a detour into matters of corporate accounting, which would serve only to unnecessarily prolong the trial and confuse the jury. The motions to quash regarding this request will be granted.

In any event, at the February 13, 2012 status, I asked SCJ's counsel whether SCJ filed amended returns. She now indicates SCJ did not do so. Thus, this request is also moot.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the motions to quash are **GRANTED IN PART** as stated herein.

Dated at Milwaukee, Wisconsin, this 13th day of November, 2012.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge